## United States Express Co. v. G. G. Council, Use, etc., of J. J. Coffman.

1. COMMON CARRIERS—*Exemption from Liability by Contract.*—In this State a common carrier can not. even by express contract, exempt himself from liability resulting from the gross negligence of himself or his servants or employes, in failing to exercise ordinary care in the transaction of his business as such carrier.

2. SAME—*When He Is Guilty of Neglect of Duty.*—A shipper of a live hog, accompanying the same, requested the agent of the express company in charge of the consignment to aid him in placing the hog where it could get more air and prevent it from dying by overheat, which the agent declined to do, and the hog died. *It was held* that the agent was guilty of neglecting his plain duty under the circumstances.

3. PARTIES—*Bailee May Maintain an Action of Tort.*—A party in possession of property as bailee, and which he ships by a common car-

rier, has such a special interest as enables him to maintain an action in tort against the carrier for an injury to such property.

4. SAME—*Actions Against Bailees.*—Although assumpsit is the usual remedy for neglect or a breach of duty against carriers, wharfingers, and others having the use or care of personal property, where their liability is founded on the common law as well as on contracts, they are also liable in an action on the case for injuries resulting from neglect or a breach of duty in the course of their employment.

**Action in Case.**—Trial in the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed September 20, 1899.

CHARLES L. CAPEN, attorney for appellant, contended that a common carrier may, by contract entered into at the time of delivery of goods for shipment, limit its liability for any negligence that is not gross or willful. I. C. R. R. Co. v. Morrison, 19 Ill. 136; C., B. & N. R. R. Co. v. Hawk, 36 Ill. App. 327; Same case, 42 Id. 322; Arnold v. I. C. R. R. Co., 83 Ill. 280; Ill. C. R. R. Co. v. Read, 37 Ill. 484; Ill. C. R. R. Co. v. Jonte, 13 Ill. App. 424; Chicago & N. W. R. R. Co. v. Montfort, 60 Ill. 175; Toledo, W. & W. R. R. Co. v. Beggs, 85 Ill. 80; Chicago, R. I. & P. R. R. Co. v. Harmon, 17 Ill. App. 640; Meuer v. Railway Co., 59 N. W. Rep. 945; Bankard v. B. & O. R. R. Co., 34 Md. 197.

And this is not changed by our statute where there is a special contract. Chicago & N. W. R. R. Co. v. Simon, 160 Ill. 648; Chicago & A. R. R. Co. v. Davis, 159 Id. 53. A private carrier may effectively stipulate that it shall not be liable for injuries resulting from negligence. Elliott on Rys., Sec. 1397, and cases cited; Hutchinson on Carriers, Sec. 40.

Where a contract of shipment is signed by the consignor, without any fraud practiced upon him, he is bound by its provisions to the same extent as in any other kind of contract; it can not be changed by parol evidence. He is conclusively presumed to assent to its terms. Ill. C. R. R. Co. v. Morrison, 19 Ill. 136; Chicago, B. & Q. R. R. Co. v. Hale, 2 Ill. App. 150; Baker v. M. S. & N. I. R. R. Co., 42 Ill. 73; Adams Ex. Co. v. Haynes, 42 Ill. 89; W. T. Co. v. New-

hall, 24 Ill. 466; Wabash, St. L. & P. R. R. Co. v. Black, 11 Ill. App. 465; Coles v. L. E. & St. L. R. R. Co., 41 Ill. App. 607; Anchor Line v. Dater, 68 Ill. 369.

FRANK Y. HAMILTON, attorney for appellee.

A common carrier does not cease to be such because he has limited his liability by a special contract.  Davidson v. Graham, 2 Ohio St. 131; Ry. Co. v. Lockwood, 17 Wall. 357; Hooper v. Wells, Fargo & Co., 27 Cal. 11; Christensen v. American Express Co., 15 Minn. 270.

A common carrier can not contract against its own negligence.  Adams Express Co. v. Stettaners, 61 Ill. 184; Ill. C. R. R. Co. v. Jonte, 13 Ill. App. 424; Christensen v. American Express Co., 15 Minn. 270; Grogan & Merz v. Same, 114 Pa. St. 523; Boehl v. C., M. & St. P. R. R., 44 Minn. 191; McFadden v. M. R. Ry. Co., 92 Mo. 343; Ry. Co. v. Wynn, 88 Tenn. 320.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit, changed before trial, by leave of court, to case, in which the appellee recovered a judgment of $400 against the appellant for negligently causing the death of a high bred Poland China sow, while being transported for pay.  The trial was by the court, without a jury, by agreement of the parties.

The declaration in case avers that the defendant was a common carrier and undertook to carry for plaintiff, for hire, a certain valuable high bred sow from Williamsville, Illinois, to Vandalia, Missouri, but so negligently placed her in an express car while being so carried, that she became overheated and died from the effect of such overheat, before arriving at destination.

The pleas filed were "not guilty" and four special pleas, setting up that the sow was received under a special written contract to transport her at the owner's risk, and releasing the defendant from any liability for loss occasioned by its negligence or otherwise; and that the defendant was not, or did not hold itself out to be a common carrier of live stock,

but a private carrier only, and only received live stock for carriage under a contract releasing it from any liability for loss occasioned by its negligence or otherwise; that the defendant was not guilty of any gross, willful or intentional negligence which damaged the sow or caused her death; that the sow was consigned to one Thomas Richards, and the plaintiff was not the owner. A demurrer was sustained to the special pleas.

The evidence shows that on June 1, 1898, G. G. Council shipped from Williamsville, Illinois, to Vandalia, Missouri, by the United States Express Company, one boar and two sows, properly crated separately, under a written contract as follows:

"LIVE STOCK TAKEN ONLY AT OWNER'S RISK—UNITED STATES EXPRESS COMPANY LIVE STOCK CONTRACT.

Agreement made at Williamsville, Ill., first day of June, 1898, between the United States Express Company and G. G. Council, of Williamsville, Ill.

Whereas G. G. Council has this day delivered to said company at Williamsville, Ill., the following animals: Three (3) hogs (crated), of which he declares himself to be the owner, consigned to Thomas Richards, at Vandalia, Mo.

Now it is agreed that said company undertakes as forwarders only, to forward said property to the nearest point of destination reached by said company. It being understood that said company relies upon the various railroad and steamboat lines of the country for its means of forwarding property delivered to it to be forwarded, it is agreed that it shall not be liable for any damage to said property caused by the detention of any train of cars, or of any steamboat upon which property shall be placed for transportation, nor by the neglect or refusal of any railroad company or steamboat to receive and forward the same. If any sum of money besides the charges for transportation is to be collected from consignee on delivery of the said property and the same is not paid at once, said company may, at its option, retain said property with ordinary and reasonable care, at shipper's risk and expense, or may return same to shipper, he to pay charges for transportation and all expenses both ways. Said shipper is to load, tranship and unload said property at his own risk, said company furnishing the necessary laborers to assist.

In consideration of the rate at which said property is to be so forwarded, said shipper agrees that said company or any railroad or transportation company or carrier, over whose line the said property may pass, shall not for any cause be liable for any injury or damage to or loss of the same whether or not such injury, damage or loss arises from negligence on the part of said company, its agents or servants; it being the intent of this contract that said property shall be forwarded entirely at the owner's risk.

W. B. Marshall, Agent.
G. G. Council, Shipper."

The three hogs were received by the appellee at Williamsville, Illinois, about 5:21 o'clock P. M., June 1, 1898, and placed in an ordinary express car of a passenger train, the car at the time being well filled with express matter and baggage piled up high, but so arranged as to leave a clear space opposite the side doors, and a passage way along the middle from one end to the other. These hogs were placed in this passage way in the rear of the car. The day was very warm and the side doors of the car and the two small windows at each end were open. The hogs appeared to be panting and suffering from the heat to such an extent, shortly after they were put into the car, that the appellee, who went along with them, requested the agent of the appellant in charge of the car, to help move them (they being too heavy for one man) so their heads would be nearer the open doors. The agent refused to assist, and the appellee got a bucket of water and sprinkled it onto the heads of the hogs. About one hour after the train carrying the hogs left Williamsville, the sow in question died, after which the agent of the appellant in the car, assisted the appellee to move the other two hogs, so their heads were near to the open doors, and they went to Vandalia, Missouri, safely.

The sow that died belonged to J. J. Coffmann, of Ohio, for whose use the suit was brought, and when shipped was in the possession of G. G. Council, the appellee, to be bred to the boar that was shipped with her, to Thomas Richards at Vandalia, he having a half interest in him and Council owning the other half.

The appellee (Council) lives on a farm near Williamsville,

raises and sells high grade hogs for breeding purposes, and for a number of years has been shipping a large number of them by express, over appellant's line, it being the only express company doing business at Williamsville. Appellant never refused to take for transportation any of the hogs that appellee offered it for shipment, and usually required him to sign a contract of shipment, the contents of which, and that under which the sow in question was shipped, were not known to appellee when he signed them.

The sow that died was shown to be worth from $400 to $600.

Appellant assigns numerous errors on the record, but on page four of his printed brief and argument, his counsel says:

" The principal errors relied upon for reversal are :

(1)   The judgment and finding are against the weight of the evidence and without evidence to support them.

(2)   Under the contract, appellant is not liable.

(3)   The appellant was not guilty of any negligence; and in any event, there is no proof that the sow died from negligent treatment.

(4)   The trial court erred in its holdings as to the law of the case.

(5)   The court erred in holding appellant liable for any but gross negligence."

We will therefore only notice those, as the others not urged are presumed to be waived.

We think the evidence sustains the finding that appellant was a common carrier at the time it received the hogs; and by the express terms of the written agreement between appellant and Council, the shipper, it appears that appellant undertook to carry the hogs from Williamsville to Vandalia for a reward.  By the terms of the written agreement, Council did purport to release appellant from liability for any injury or damage to, or loss of the hogs arising from the negligence of appellant, its agents or servants, while they were being transported; but such release was void, as being against public policy, for in this State a common carrier can not, even by express contract, exempt itself from liability resulting from the gross negligence or willful mis-

conduct of itself or its servants or employes; or from a failure on its part, or that of its servants, to exercise ordinary care in the transaction of its business as such carrier. Chicago & Northwestern R. R. Co. v. Chapman, 133 Ill. 96, and cases cited.

When Council first requested the agent of appellant in charge of the car containing the hogs, to aid him in placing them where they could get more air and prevent them from dying from overheat, and he declined to do so, he was guilty of neglecting his plain duty under the circumstances. Illinois Central R. R. Co. v. Adams, 42 Ill. 474, and Toledo, Wabash & Western R. R. Co. v. Hamilton et al., 76 Ill. 393.

While there is some question as to whether or not the sow died from the effects of being overheated before she was received by appellant, or afterward, yet we are of the opinion that the court was warranted by the evidence in finding that it was afterward.

Appellant's counsel also insist that appellee can not recover on the facts in this case in an action of tort, because by the evidence it appears that the usee, Coffman, owned the sow that died, and that Council can recover, if at all, only in an action *ex contractu*. It does appear that Coffman owned the sow that died, but it also appears that when shipped she was in the possession of Council as bailee, and as such bailee we think he had such a special interest in the sow as, coupled with the possession at time of shipment, enables him to maintain an action of tort against the mere wrongdoer, for "an action for an injury to personalty may be brought in the name of the person having only a special property, or interest of a limited or temporary nature therein. But in this case, the general rule seems to be that the party should have had possession." Chitty on Pleading, 7th Ed., Vol. 1, p. 70.

As to Council's remedy being confined to an action *ex contractu* on the special contract in writing, we will say that, although "assumpsit is the usual remedy for neglect or breach of duty against bailees, as against carriers, wharf-

ingers, and others having the use or care of personal prop-
erty, whose liability is founded on the common law as well
as on the contract, yet it is clear that they are also liable
in case for an injury resulting from their neglect or breach
of duty in the course of their employ." Chitty on Plead-
ing, 7th Ed., Vol. 1, p. 151.

Finding no reversible error in this record, we affirm the
judgment of the Circuit Court herein.